IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH J. GRECO | : CIVIL ACTION |
| v. | : |
| NGIA, INC. and SHARLOTTE LEE CROXFORD | : NO. 20-191 |

MEMORANDUM OPINION

**Savage, J.**                                                        **April 1, 2021**

      This professional negligence case against a bond broker and its principal arises out of a successful scheme to defraud plaintiff Joseph Greco out of a four million dollar ($4,000,000.00) deposit he made in connection with an investment. After the bonding company which had secured his deposit failed to indemnify him, Greco brought this action against the broker and its principal who had placed the bond.

      The issue on partial summary judgment is whether the undisputed facts establish a confidential relationship giving rise to a fiduciary duty. We conclude there was no confidential relationship because Greco never ceded control of the decision to select the bonding company to the defendants.

      Greco deposited four million dollars with Scotia International Bank of Nevada ("SION") to help a developing business secure a line of credit.[1] As a part of the deal, SION agreed to hold the deposit as fiduciary and SubGallagher Investment Trust ("SGIT"), a bonding company, guaranteed the return of the deposit in the event of default.[2]

---

[1] This is an abbreviated version of the factual background. A more detailed description of the underlying transaction and the relationship of the parties involved in the transaction can be found in the July 29, 2020 opinions in the related case, *Greco v. SubGallagher Inv. Trust et al*, 19-cv-2922 (ECF Nos. 120 and 124).

[2] *See* Am. Compl. Ex. C (ECF No. 23) ("Financial Guarantee and Bond Agreement").

Greco engaged bond broker NGIA and its principal, Sharlotte Croxford, (collectively "Croxford") to purchase a surety bond to protect his investment and his deposit.[3]  Croxford placed the bond with SGIT.  Greco paid a $280,000.00 premium.[4]

After SION failed to return the deposit, SGIT did not honor its guarantee agreement.[5]  Greco then brought suit against SGIT, SION and others for breach of contract, fraud, and breach of fiduciary duty.[6]  A default judgment was entered against SGIT in the amount of $4,280,000.00.[7]

In his complaint against Croxford, Greco asserted claims for professional negligence, breach of fiduciary duty and negligent failure to train and supervise.  Now, discovery having been completed, Croxford moves for partial summary judgment on the breach of fiduciary duty count.[8]

## Standard of Review

Summary judgment is appropriate "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Judgment will be entered against a party who fails to sufficiently establish any element essential to that party's case and who bears the ultimate burden of proof at

---

[3] *See* Defs.' Mot. for Partial Summ. J. Ex. C at 18:1-5 (ECF No. 31-1) ("Croxford Deposition Transcript").

[4] *See* Defs.' Mot. for Partial Summ. J. Ex. B at 72:11-17 ("Greco Deposition Transcript").

[5] *Id.* at 74:24-76:2; *see also* Pl's Interrog. Resp., No. 2 (ECF No. 34).

[6] *See Greco v. SubGallagher Inv. Trust et al,* 19-cv-2922, Am. Compl. (ECF No. 23).

[7] October 30, 2019 Order, *Greco v. SubGallagher Inv. Trust et al.*, 19-cv-2922 (ECF No. 62).  The case was later transferred to the District of Utah after we granted the other defendants' motions to dismiss on jurisdictional grounds.  Rather than dismiss the case, we transferred it for lack of personal jurisdiction.

[8] Croxford moved for summary judgment on both the breach of fiduciary and failure to train and supervise counts.  After the motion was filed, the parties stipulated to the dismissal of the failure to train count.  *See* Stip. of Dism. of Count III of Pl.'s Am. Compl. (ECF No. 57).

trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The initial burden of demonstrating that there are no genuine issues of material fact falls on the moving party. FED. R. CIV. P. 56(a). Once the moving party has met its burden, the nonmoving party must counter with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). The nonmovant must show more than the "mere existence of a scintilla of evidence" for elements on which it bears the burden of production. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Bare assertions, conclusory allegations or suspicions are not sufficient to defeat summary judgment. *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

## Analysis

### Breach of Fiduciary Duty

To establish a breach of fiduciary duty under Pennsylvania law,[9] the plaintiff must prove: (1) the parties had a fiduciary relationship; (2) the defendant breached its duty to act in good faith and solely for the plaintiff's benefit; and (3) the plaintiff suffered injury caused by the breach. *Snyder v. Crusader Servicing Corp.*, 231 A.3d 20, 31-32 (Pa. Super. 2020) (citing *Kirschner v. K & L Gates LLP*, 46 A.3d 737, 757-58 (Pa. Super. 2012)). The threshold element, existence of a fiduciary relationship, is the issue here. Absent a fiduciary relationship, there is no cause of action.

---

[9] A federal court exercising diversity jurisdiction applies the substantive law of the forum state. *Glenn Distribs. Corp. v. Carlisle Plastics, Inc.*, 297 F.3d 294, 300 n.3 (3d Cir. 2002). The parties agree that Pennsylvania law applies.

3

Greco argues that his relationship with Croxford was a confidential one with "enhanced duties of care." He contends that the undisputed facts establish a "confidential relationship" which is equivalent to a fiduciary relationship.

Because a fiduciary duty is the highest duty implied by law, it will be imposed only when it is certain that a fiduciary relationship exists. *Yenchi v. Ameriprise Fin., Inc.*, 161 A.3d 811, 820-21 (Pa. 2017). The duty arises out of the nature of the parties' relationship. Certain relationships, such as principal and agent, attorney and client, guardian and ward, and partners, create a fiduciary duty as a matter of law. *Id*. at 820. Even when not implied by law, a fiduciary duty may arise from a confidential relationship when "the parties do not deal on equal terms, but, on the one side there is an overmastering influence, or, on the other, weakness, dependence or trust, justifiably imposed." *Id*. (quoting *Frowen v. Blank*, 425 A.2d 412, 416-17 (Pa. 1981)). In that instance, the duty is imposed because one party to the relationship has "the power and means to take advantage of, or exercise undue influence over, the other." *Id.* Determining whether there is a confidential relationship is a fact-intensive inquiry.

Confidential relationships "usually involve some special vulnerability in one person that creates a unique opportunity for another person to take advantage to their benefit." *Yenchi*, 161 A.3d at 821. In *Yenchi*, the Pennsylvania Supreme Court explained that where "one party lacks the ability to understand the nature and terms of the transaction and simultaneously reposes their complete trust in the other party based upon well-established relationships, this circumstance provides an opportunity for the second party to exercise undue influence over the first and, thus, effectively control the decision-making process to their advantage." *Id.* The critical factor for determining the existence of this

4

relationship is "whether the relationship goes **beyond** mere reliance on superior skill, and into a relationship characterized by 'overmastering influence'" that results in the effective "ceding of control over decision-making." *Id.* at 823 (internal citations omitted) (emphasis in original).

Greco argues that because he paid Croxford hundreds of thousands of dollars in fees and "relied solely on [her] to locate, select and recommend the bonding company," she had an "overmastering influence" over his decision.[10]  This duty was breached, he argues, because Croxford possessed "key knowledge" about SGIT she did not disclose to him.[11]

Here, the undisputed evidence establishes that Greco did not surrender decision-making authority to Croxford.  He may have relied upon her advice and recommendation of a suitable bond placement, but it was he, in consultation with his attorney, who selected SGIT to bond the transaction.  It was his choice, not Croxford's.

Croxford was introduced to Greco and held herself out as a "surety bond specialist."[12]  Greco "felt comfortable" with her because of her expertise.[13]  He ultimately accepted her recommendation to purchase SGIT's surety bond.[14]  His reliance on Croxford's expertise alone does not establish a confidential relationship.

---

[10] Pl.'s Resp. to Partial Summ. J. at 20-21 (ECF No. 34).

[11] *Id.* at 17-18.

[12] Croxford Dep. Tr. at 19:7-22.

[13] Greco Dep. Tr. at 25:12-23.

[14] *Id.* at 46:12-18 ("The only thing I cared about was that my money was 100 percent safe.  There was no chance that I could lose that deposit.  If I didn't have the assurance that I got from Ms. Croxford about SGIT's capability, their credibility, there is zero chance that I would have done this.  Zero.  $4 million is an incredible amount of money").

A fiduciary duty is not imposed on a party merely because that party has superior knowledge or expertise. It will attach in a consumer transaction only when one party "cedes decision-making control to the other party." *Yenchi*, 161 A.3d at 823. Thus, the party claiming a confidential relationship giving rise to a fiduciary duty must prove both that he relied on the other party's superior knowledge or expertise and yielded decision-making authority to the other party.

Greco spoke to at least two references Croxford had given him.[15] His attorney participated in his conversations with Croxford.[16] After consulting with his attorney and performing his own analysis, he made the decision to accept Croxford's recommendation which he was free to accept or reject.[17] Croxford did not exert any "overmastering influence" over Greco.

Greco never ceded decision-making authority to Croxford. Greco and his attorney did their own investigation, having four to five conversations with SGIT's counsel.[18] During these conversations, Greco "peppered [SGIT's counsel] with questions about the underlying assets"[19] to better understand SGIT's financial status and to confirm that it had sufficient resources to protect his investment.[20] Only then did he decide to place the bond. When pressed about who made the decision, Greco testified, "[u]ltimately, I did."[21]

---

[15] *Id.* at 54:13-55:20.

[16] *Id.* at 30:11-31:13.

[17] *Id.* at 68:6-69:18.

[18] *Id.* at 49:23-50:7.

[19] *Id.* at 50:13-23.

[20] *Id.* at 43:5-17.

[21] *Id.* at 68:10-12.

He explained that "I made that decision with an analysis of what I [had] been told, what I learned.  And the comfort I had with the person who was helping me through this process[,]  Ms. Croxford."[22]

Greco may have relied on Croxford's advice, but he never ceded decision-making authority to her.  He, not Croxford, made the decision to purchase the SGIT bond. Thus, Greco has failed to establish that a confidential relationship giving rise to a fiduciary duty existed, an essential element of a breach of fiduciary duty cause of action.

*Imposition of Punitive Damages*

Croxford also moves for dismissal of Greco's demand for punitive damages. Croxford argues that punitive damages are reserved for conduct beyond mere negligence or mistake and that there has been no evidence she acted in a way that justifies punitive damages.  Greco counters that he is entitled to punitive damages because "Defendants [*sic*] actions were willful, intentionally [*sic*], and exhibited a reckless indifference to the rights of the Plaintiff."[23]

Punitive damages are awarded to punish outrageous conduct and to deter similar conduct.  Restatement (Second) of Torts § 908 (1979).  They are reserved for conduct that is "outrageous, because of the defendant's evil motive or his [or her] reckless indifference to the rights of others."  *Id*.

To establish a claim for punitive damages, the plaintiff must prove that "(1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was

---

[22] *Id.* at 68:15-19.

[23] Pl.'s Resp. to Partial Summ. J. at 14 (quoting Pl.'s Br. in Support of Mot. to Am., at 9-10 (ECF No. 20-1)).

7

exposed and that (2) he [or she] acted, or failed to act, as the case may be, in conscious disregard of that risk." *Hutchison ex rel. Hutchison v. Luddy*, 870 A.2d 766, 772 (Pa. 2005).  An appreciation of the risk is necessary because "the act or omission must be intentional, reckless, or malicious." *Rizzo v. Haines,* 555 A.2d 58, 69 (Pa. 1989).

Croxford argues that there is no evidence of willful, wanton or reckless conduct. Greco responds that Croxford's knowledge of material facts that she "chose not to disclose" to Greco means that her conduct went "beyond mere negligence or gross negligence [and] constitute[d] either a willful or reckless indifference" to his "rights" and warrants punitive damages.[24]

A jury could find that Croxford acted with a conscious disregard of the risks of placing the bond with SGIT.  Greco contends Croxford knowingly and intentionally withheld information about SGIT because of a conflict of interest and failed to disclose material information regarding the questionable involvement of a criminal in SGIT and its lack of a license.[25]  If proven, these facts could permit a jury to conclude that Croxford acted intentionally and recklessly in disregard of Greco's rights.  Therefore, we shall deny the defendants' request to dismiss the claim for punitive damages.

---

[24] *Id.* at 17-18.

[25] Pl.'s Resp. to Partial Summ. J. at 17-18 ("[T]he Broker Defendants **knew** that of [sic] the association of Larry Wright with the SGIT, **knew** that Mr. Wright had been implicated in fraud and breach of trust and charged criminally, **knew** that SGIT was not a licensed entity, **knew** that this was the first time that the Broker Defendants had never brokered a bond this large, and that [sic] **knew** that they felt they were representing both Plaintiff and SGIT, a clear conflict of interest; yet the Broker Defendants chose ***not to disclose*** any of these key, material pieces of information that might have steered Mr. Greco away from a fraudulent and asset-less bonding entity") (citing Pl.'s Counter-Statement of Material Facts, ¶¶ 13-14, 18-23) (ECF No. 34)) (emphasis in original).

**Conclusion**

Because the undisputed evidence establishes that Greco and Croxford did not have a fiduciary or confidential relationship, Greco cannot prevail on a cause of action for breach of fiduciary duty.  There is a factual dispute bearing on whether Croxford acted recklessly or intentionally in disregard of Greco's rights when she recommended SGIT.  Therefore, we shall grant Croxford's motion for summary judgment as to Count II and decline to dismiss the demand for punitive damages.